THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

KALEB FRANKS,

    Defendant.

Case No. 1:20-MJ-416

Hon. Sally J. Berens
U.S. Magistrate Judge

---

**DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER AND MEMORANDUM IN SUPPORT**

---

Defendant Mr. Kaleb Franks, through his attorney Scott Graham, moves for revocation of the detention order entered in this case on October 14, 2020. *See* RE. 40: Detention Order, PageID # 249. In support of this motion, he offers this memorandum of law.

## *Background*

This case began with the government filing a criminal complaint on October 6, 2020, charging Mr. Franks and five others with conspiring to kidnap, in violation of 18 U.S.C. § 1201(c). *See* RE. 1: Complaint, PageID # 1. Authorities arrested Mr. Franks the following day in Ypsilanti, Michigan. His initial appearance occurred October 8, 2020. *See* RE. 12: Minutes of First Appearance, PageID # 34. Leading up to the detention hearing in this matter, the probation office, in the form of a pretrial

services report, recommended Mr. Franks' release on an unsecured bond with certain conditions. Mr. Franks agrees that all of these conditions are appropriate.

With a detention hearing as part of the first day, the preliminary hearing in this matter then spanned two days: October 13 and 16, 2020. *See* RE. 35: Minutes of Prelim. and Dtn. Hrg., PageID # 83; RE. 48: Minutes of Continued Prelim. Hrg., PageID # 267. The Court entered an order of detention on October 14, 2020. RE. 40: Detention Order, PageID # 249. The Court found, by clear and convincing evidence, that a serious risk exists that Mr. Franks could endanger the safety of another or of the community. *Id.* Also, the Court bound the defendants over for proceedings before the grand jury. *See* RE. 51: Order, PageID # 270. The Court set a status conference for November 4, 2020. *Id.* Now, the government has sought a forty-day extension for seeking an indictment. *See* RE. 52: Motion to Continue, PageID # 271. The government's request is unopposed.

## *Legal Discussion*

Mr. Franks now seeks review of the detention order under 18 U.S.C. § 3145(b). In accordance with that section, a person ordered detained (by a magistrate judge) "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and that "motion shall be determined promptly." *See* 18 U.S.C. § 3145(b). In a related vein, a party may object to a magistrate judge's "order within 14 days after being served with a copy of a written order." *See* Fed. R. Crim. P. 59(a).

The law's default position provides "that a defendant should be released pending trial," though that position may be modified for certain, "particularly dangerous," defendants. *See, e.g.*, *United States v. Young*, No. 19-5692, 2019 U.S. App. LEXIS 33453, at *1 (6th Cir. Nov. 7, 2019) (unpublished). With the current charge against Mr. Franks falling under 18 U.S.C. § 1201(c), Mr. Franks does not qualify as one of these "particularly dangerous" defendants. *Cf. id.* at *1-3. No presumption in favor of detention exists here. *Cf. id.* at * 2-*3; *see also* 18 U.S.C. § 3142(e) *and United States v. Carrington*, No. 2:19-CR-59, 2020 U.S. Dist. LEXIS 74339, at *14 n.2 (N.D. In. April 28, 2020) (unpublished).

Nor does a reviewing court need to defer to the magistrate judge's findings. *Young*, 2019 U.S. App. LEXIS 33453, at *3. Thus 18 U.S.C. § 3142 still provides the relevant starting point for the instant inquiry. The factors for consideration under § 3142(g) are: the nature and circumstances of the charged offense; the weight of the evidence against the defendant; the defendant's history and characteristics (including character, physical and mental health, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings); whether, at the time of the charged offense or at the time of the instant arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence; and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

In Mr. Franks' case, these factors have militated, and continue to weigh, in favor of release. Since February 29, 2018, Mr. Franks has owned a house in Waterford, Michigan. He lives with his fiancé and her mother. Neither woman has any criminal history. Mr. Franks' girlfriend has a job, and Mr. Franks was working at Meridian Health Systems, in the area of drug and alcohol rehabilitation, when authorities arrested him. At that point, he had been working there for four years. He was also volunteering with Families Against Narcotics, and working with the 6th Circuit Court in Pontiac, helping probationers with drug addiction. Along with this work, Mr. Franks was working with Rise Up Recovery.

Once a heroin user, Mr. Franks has been sober since he went to jail in 2013. Using his own past experiences as background, he had turned to helping others struggling with addiction. He represents the ideal of a once-drug-offender turning his life around. He made these strides in the wake of a 2011 conviction for possession of cocaine (with failed time in drug court and nine months in jail) and a 2013 conviction for home invasion, second degree (which ended in HYTA placement and nine months in jail, along with two years of drug court; that time, he successfully completed the program). After years of sobriety, Mr. Franks successfully moved for expungement of his possession of cocaine conviction. Mr. Franks thus does not have any sort of felon status.

Aside from the support provided by his fiancé, Mr. Franks has other important support. He has a close relationship with his family. His sister attended court here and will do whatever she can to support Mr. Franks. His father did not

4

attend court only because counsel suggested there might not be room for him in the courtroom. He fully supports his son.

When the probation department recommended in favor of bond, it noted that it was not taking into account any "presumption" that might apply, or the seriousness of the offense. There is no presumption against bond. The question of seriousness of the offense looms as significant. Now that any possible plan or conspiracy has been thwarted, there is no imminent threat to a public official or anyone else. Quick work by the authorities took care of that potential issue. It is now clear that the alleged object of the conspiracy is outlandish and absurd. There was no plan regarding what the alleged conspirators would do with the governor. There has been talk of a plan to set her adrift in a boat in Lake Michigan. Of course, there is no evidence describing how this would occur. Allegations have been made that the conspirators planned to take the governor to Wisconsin and put her on trial. Again, there is no evidence about how they planned to transport her to Wisconsin, through what would have surely been the most extensive manhunt in the history of the state.

The Complaint filed in this case indicated that charges were necessary because alleged coconspirators were planning to make a down payment on explosives during an October 7 meeting. This meeting was arranged by the government's informant. Mr. Franks went to the meeting hoping to get tactical gear. He took $23, hardly a "down payment" for anything.

It is noteworthy that two persons charged in the companion state cases, Brian Higgins and Peter Musico, have manageable bonds. Higgins' bond was set at $10,000. Musico's bond, originally set at $10,000,000, was reduced to $100,000. There seems to be some recognition that any imminent danger in plans by the alleged conspirators has dissipated.

The government made much during the detention proceedings of the claim that Mr. Franks was involved in manufacturing two "ghost guns", or unregistered handguns. The government argued that this suggested Mr. Franks could obtain firearms if on bond. But the facts show that Mr. Franks did not do any work to make a firearm. He did not have the tools or experience to do so. He will not have access to any firearms if he is admitted to bond.

Along with these positive personal aspects, counsel has pointed out the grave threats presented by the current COVID-19 pandemic. *See, e.g.*, RE. 28: Proffer of Facts, PageID # 71. Mr. Franks is a type-one insulin-dependent diabetic who also takes prescription medicine for high cholesterol and who suffers with something possibly involving ulcerated colitis. Mr. Franks' diabetes mean that he may face a higher risk of suffering severe illness with COVID-19. *See* Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#diabetes.

Especially in light of the pandemic, courts have been finding release appropriate in cases with far more factors weighing against release. For example, in

*United States v. Harris*, 451 F. Supp. 3d 64, 65-66 (D.D.C. 2020), the defendant had pleaded guilty to a child-pornography offense, an offense falling under the presumption in favor of detention. The magistrate judge had even found that the defendant had not rebutted the dangerousness presumption. *Harris*, 451 F. Supp. 3d at 65. The defendant's offense qualified as a crime of violence. *Id.* at 67. Ultimately, the district court found it had the authority to release the defendant pending sentencing, and it did so based on the defendant's personal circumstances, the fact the defendant would be in his father's custody under strict conditions, and the COVID-19 pandemic. *Id.* at 70-71.

In Mr. Frank's case, factors favor release to an even greater degree. Mr. Franks is still presumed innocent. *See, e.g.*, 18 U.S.C. § 3142(j). His case does not involve a presumption in favor of detention. And he has specific health conditions that put him at greater risk for suffering severe complications if he contracts COVID-19. Mr. Franks' circumstances also show that imposing conditions of release would suffice to ensure the safety of the community and Mr. Franks' appearance as necessary.

*Conclusion*

This situation demonstrates that Mr. Franks should have been released on bond. Release presents the best situation for allowing Mr. Franks to remain socially isolated during this pandemic to avoid contracting COVID-19, which could cause him severe illness given his diabetes, and which, of course, has been rampant in custodial settings during this pandemic. And it can be accomplished in a safe manner.

Respectfully submitted,

Date: October 28, 2020   **SCOTT GRAHAM PLLC**

By: /s/ Scott Graham
   Scott Graham
   Attorney for Defendant
Business Address:
   1911 West Centre Avenue, Suite C
   Portage, Michigan 49024
   (269) 327.0585

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Criminal Rule 47.2(b)(ii), counsel asserts that this brief contains 1,711 words, as counted by Microsoft Word, version 16.42.

                                        Respectfully Submitted,

                                    By: /s/ Scott Graham

Dated: October 28, 2020                SCOTT GRAHAM
                                      Attorney for Defendant
                            Business Address:
                                      1911 West Centre Avenue, Suite C
                                      Portage, Michigan 49024
                                      (269) 327.0585
                                      sgraham@scottgrahampllc.com