THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

      Plaintiff,

v.

KALEB FRANKS,

      Defendant.

Case No. 1:20-CR-183

Hon. Robert J. Jonker
Chief U.S. District Court Judge

### DEFENDANT'S MOTION FOR A CHANGE OF VENUE
### AND MEMORANDUM IN SUPPORT

Kaleb Franks moves this Court to allow for a change of trial venue. In support of this motion, Mr. Franks offers the following memorandum of law. Essentially, press coverage of (and participation in) this matter has corrupted the potential trial atmosphere to the point that Mr. Franks will be denied a fair trial in Michigan.

*Procedural Background*

This case began with the government filing a criminal complaint on October 6, 2020, charging Mr. Franks and five others with conspiring to kidnap, in violation of 18 U.S.C. § 1201(c). *See* RE. 1: Complaint, PageID # 1. Authorities arrested Mr. Franks the following day in Ypsilanti, Michigan. His initial appearance occurred October 8, 2020. *See* RE. 12: Minutes of First Appearance, PageID # 34. After

litigation of the issue, the Court ordered Mr. Franks detained. *See, e.g.*, RE. 74: Order Affirming Detention Order, PageID # 437-38.

The government indicted Mr. Franks and his codefendants on December 16, 2020. RE. 86: Indictment, PageID # 573-78. This indictment included a single charge: conspiracy to kidnap Michigan's governor. *See id.* at 573. Only one codefendant has pleaded guilty (doing so on January 27, 2021), with the rest proceeding toward trial, which is scheduled to begin on October 12, 2021 (with a final pretrial conference on September 23, 2021). *See* RE. 143: Minutes of Garbin Change of Plea, PageID # 759. A superseding indictment, filed on April 28, 2021, added weapons counts against codefendants but did not modify the charge against Mr. Franks. *See* RE. 172: Superseding Indictment, PageID # 961-76.[1]

### *Legal Discussion*

Generally, federal cases are tried in the district in which the alleged offense arose. *See, e.g.*, Fed. R. Crim. P. 18. Exceptional circumstances, however, can require a change of venue. Under Rule 21, if a defendant files a motion, "the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

---

[1] For factual background, Mr. Franks incorporates here by reference the factual discussion in his memo in support of his motion seeking an order compelling the government to produce files on all confidential human sources used in this investigation.

Regarding changes of venue, the Sixth Circuit has discussed two perspectives: (1) that of *presumed* prejudice; and (2) that of *actual* prejudice. *See, e.g.*, *Ritchie v. Rogers*, 313 F.3d 948, 955-56 (6th Cir. 2002). When a "motion for a change of venue based on extensive pretrial publicity and predicated on 'presumed prejudice' fails, the issue of 'actual prejudice' remains for review by the trial court to determine whether a review of both the jury voir dire testimony and the extent and nature of the media coverage indicates a fair trial is or is not possible." *Id.* at 956. Complicating the issue of "actual prejudice" "is the tension between the due process right of a defendant to a fair and impartial jury and the First Amendment right of the media to report on the proceedings in the context of the approaching criminal trial." *Id.* With extensive pretrial publicity comes a heightened importance for voir dire, as courts must remain vigilant regarding "whether a fair and impartial jury [can] be impaneled." *Id.*

Courts reserve "presumed prejudice" for cases in which the trial atmosphere has been "utterly corrupted by press coverage." *See id.* at 955 n.11. Without "utter corruption by the press of the trial atmosphere," actual voir dire constitutes the centerpiece of attention for a motion to change venue. *Id.* Scholarship has explored the tensions involved in these inquires. *See, e.g.*, *id.* at 962 n.14 (citing "articles addressing fair trials and a free press in the context of change of venue motions"). And the Sixth Circuit has noted that changes of venue can ameliorate prejudice from pretrial publicity. *See, e.g.*, *Jackson v. Turner*, No. 97-4045, 1998 U.S. App. LEXIS 27653, at *20 (6th Cir. Oct. 23, 1998) (unpublished) ("Jackson has not proven

3

actual prejudice from the leaked reports. Nor has he explained how the voir dire and change in venue failed to ameliorate any harm from pretrial publicity.").

One can presume prejudice in this case based on the extensive, negative, pervasive press coverage of the allegations; the press's active involvement in the case; and the fact that the object of the alleged conspiracy was the kidnapping of the state's governor, who remains publicly vocal about the matter. Just yesterday, the *Detroit News* reported on a co-defendant's motion for early designation of witnesses and exhibits (see RE. 217: Croft Motion for Early Designation, PageID # 1164-68). *See* Robert Snell, "FBI Agent Audio Raises Questions About Sabotage in Whitmer Kidnap Case, Defense Suggests, *The Detroit News* (July 11, 2021), *available at* https://www.detroitnews.com/story/news/local/michigan/2021/07/11/fbi-agent-audio-raises-questions-sabotage-whitmer-kidnap-case-defense-suggests/7931839002/. This article classifies the motion as "com[ing] despite concerns about the safety of confidential informants and undercover FBI agents who helped infiltrate the alleged plot last fall—and whose names would be expected to appear on a witness list." *Id.* The piece also includes inflammatory video of weapons use and explosives.

The press, as the Court knows well, has even taken to involving itself directly in these proceedings, filing motions and attempting to obtain access to exhibits. *See, e.g.*, RE. 213: Minutes of Hrg. on Media's Motions to Compel Access to Exhibits, PageID # 1125.

The governor herself continues to address the public on the allegations in this matter. A piece in *Newsweek Magazine* last week opened this way:

4

> Michigan Governor Gretchen Whitmer says she's been in a pensive mood lately, having spent recent days writing a victim impact statement ahead of the sentencing of an anti-government extremist who took part in a plot to kidnap and kill her last year. Her statement, which will be revealed in federal court on sentencing day next month, has forced her, she says, to take stock of what she's been through over the past year and what that portends for the nation going forward. "We've come to a dangerous moment in our nation where it's not just about disagreement, it's about threats of violence," she tells *Newsweek*.

*See* Steve Friess, "Gretchen Whitmer Says Kamala Harris Is Unfairly Treated Because of Race and Gender," *Newsweek Magazine* (July 8, 2021), *available at* https://www.newsweek.com/gretchen-whitmer-says-kamala-harris-unfairly-treated-because-race-gender-1607748. While Garbin has pleaded guilty, this kind of coverage conveniently omits mention of everyone else continuing as presumed innocent. *Cf.* 18 U.S.C. § 3142(j).

The article includes statements like this one: "Whitmer spoke to *Newsweek* about the pace of Michigan's COVID recovery, her personal pandemic protocol, the sentencing of one of her would-be kidnappers . . . ." *Id.* And this one: "You know, I've been a target of white supremacists' efforts to kidnap me, put me on some sort of a sham trial, and execute me. This is the horrible, destructive climate we find ourselves in." *Id.* Again, these statements completely ignore the presumption of innocence, and they contradict the government's own discovery, which includes materials related to sympathies with the Black Lives Matter movement.

Other statements go on to discuss the governor's reaction to writing her "victim-impact statement" and to the supposed "misogyny" intertwined in the alleged kidnapping conspiracy. Even beyond ignoring the presumption of innocence

5

and the fact that trial has not even occurred yet for Mr. Franks and all of his co-defendants besides Garbin, the repeated discussion of the governor as a "victim" ignores the nature of the charges. This case involves prosecution of a supposed "plan," of alleged discussions—not action. The governor did not fall victim to any sort of actual action. Indeed, she didn't know about any supposed plan, of course, until after the government filed its case.

Potential jurors, especially women jurors, are likely to feel an emotional reaction to exhortations like this one:

> "it's about threats of violence. And that's not right. It's downright dangerous for the individual, but it's dangerous for our democracy, too.

*Id.*

Given the very personal way the media and the governor have couched the supposed "threats" to women, individuals, and democracy here, one can easily presume prejudice. And while transfer to another venue will not cure all the problems inherent in this kind of national press coverage, moving the case outside of Michigan would represent a small step toward distancing the allegations from these attacks on the presumption of innocence and securing a fair trial and constitutionally sufficient process with an impartial jury, in accordance with Fifth and Sixth Amendment commands.

### *Conclusion*

Given the gravity of this case and the media's involvement in it and portrayal of it, the potential trial atmosphere exhibits corruption such that Mr. Franks will be unable to obtain a fair trial with an impartial jury in Michigan. He thus asks for a

change of venue as a step toward better securing his Fifth and Sixth Amendment rights and avoiding unfair prejudice.

                Respectfully submitted,

Date: July 12, 2021            **SCOTT GRAHAM PLLC**

                By:  /s/ Scott Graham
                     Scott Graham
                     Attorney for Defendant
                Business Address:
                     1911 West Centre Avenue, Suite C
                     Portage, Michigan 49024
                     (269) 327.0585

## CERTIFICATE OF COMPLIANCE

In accordance with Local Criminal Rule 47.2(b)(ii), counsel asserts that this brief contains 1,476 words, as counted by Microsoft Word, version 16.50.

Dated: July 12, 2021

By: /s/ Scott Graham
    SCOTT GRAHAM
    Attorney for Defendant
Business Address:
    1911 West Centre Avenue, Suite C
    Portage, Michigan 49024
    (269) 327.0585
    sgraham@scottgrahampllc.com