THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

KALEB FRANKS,

    Defendant.

Case No. 1:20-CR-183

Hon. Robert J. Jonker
Chief U.S. District Court Judge

**DEFENDANT'S MOTION TO SEVER AND MEMORANDUM IN SUPPORT**

    Defendant Mr. Kaleb Franks, through his attorney Scott Graham, moves this Court to sever his trial from that of his codefendants, especially that of codefendants Barry Croft, Daniel Harris, and Adam Fox. In support of this motion, Mr. Franks offers this memorandum of law. While five men (including Mr. Franks) stand charged with supposedly conspiring to kidnap Michigan's governor, only three of these men (Croft, Harris, and Fox) face weapons charges . . . and these weapons charges (involving allegations of "weapons of mass destruction" and "destructive devices") make the emotional aspects of those men's cases far different from that of Mr. Franks—and quite unfairly prejudicial to Mr. Franks.

*Procedural Background*

    This case began with the government filing a criminal complaint on October 6, 2020, charging Mr. Franks and five others with conspiring to kidnap, in violation of 18 U.S.C. § 1201(c). *See* RE. 1: Complaint, PageID # 1. Authorities arrested Mr.

Franks the following day in Ypsilanti, Michigan. His initial appearance occurred October 8, 2020. *See* RE. 12: Minutes of First Appearance, PageID # 34. After litigation of the issue, the Court ordered Mr. Franks detained. *See, e.g.*, RE. 74: Order Affirming Detention Order, PageID # 437-38.

The government indicted Mr. Franks and his codefendants on December 16, 2020. RE. 86: Indictment, PageID # 573-78. This indictment included a single charge: conspiracy to kidnap Michigan's governor. *See id.* at 573. Only one codefendant has pleaded guilty (doing so on January 27, 2021), with the rest proceeding toward trial, which is scheduled to begin on October 12, 2021 (with a final pretrial conference on September 23, 2021). *See* RE. 143: Minutes of Garbin Change of Plea, PageID # 759. A superseding indictment, filed on April 28, 2021, added weapons counts against codefendants but did not modify the charge against Mr. Franks. *See* RE. 172: Superseding Indictment, PageID # 961-76.[1]

## *Legal Discussion*

Mr. Franks asks this Court to sever his trial from that of his codefendants charged with weapons offenses. While Federal Rule of Criminal Procedure 8 provides for joinder of defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," joinder here is inappropriate because the weapons offenses are not part of

---

[1] For factual background, Mr. Franks incorporates here by reference his factual discussion in his motion seeking an order compelling the government to produce files on all confidential human sources used in this investigation.

the same alleged "transaction" as the conspiracy charged and allowing joinder would unfairly prejudice Mr. Franks at trial.

    A.    *Joinder is inappropriate under Rule 8 because the allegations regarding the codefendants' weapons charges do not constitute a part of the "same act or transaction" as the allegations against Mr. Franks.*

Federal Rule of Criminal Procedure 8 provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). While courts may favor trying defendants together when they are indicted together, this preference for joint trials does not end the inquiry, and prejudicial joinder gives rise to grounds for severance or other relief as justice dictates. *See, e.g.*, *United States v. Breinig*, 70 F.3d 850, 852-53 (6th Cir 1995).

Rule 14 provides for relief "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). In such cases, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." *Id.* Improper joinder can violate the Constitution if it results in denial of a defendant's Fifth Amendment right to a fair trial. *See, e.g.*, *United States v. Mann*, 701 F.3d 274, 290 (8th Cir. 2012).

Joinder can present a sticky wicket, but here, things are a little more straightforward. Simply, the government has made no allegations that Mr. Franks was involved in any work with weapons of mass destruction or destructive devices.

3

Yet those terms—"weapons of mass destruction" and "destructive devices"—carry a payload of potential prejudice in front of a jury. These weapons charges also mean that evidence ("scary," emotional evidence) that would otherwise not relate to Mr. Franks at all, and not come in at trial, will appear before the jury front and center. Even if that evidence will not technically apply against Mr. Franks, it will certainly go far in frightening jurors and eliciting emotional decisions from them.

Cases on joinder point to separating trials in situations like these. For example, in *Mann*, the government declined to decide "whether the joinder of defendants was proper" because it found that joinder of the defendant's wife did not prejudice the defendant. *Mann*, 701 F.3d at 293. The court noted that "[e]ach piece of evidence that the district court admitted relating to [the defendant's wife] was also evidence against [the defendant] that supported the conspiracy charge and would have been admitted even if [the wife] had not been joined as a defendant." *Id.* at 294. The circumstances of Mr. Franks' case, of course, look quite different. In *Mann*, the defendant had led the offense, and he himself was charged with the weapons-of-mass-destruction crimes. *Cf. id.* Mr. Franks simply stands apart from the weapons issues here.

Courts in this district have severed defendants' trials in circumstances not too different from those at hand. The Sixth Circuit commented on the late Judge Enslen severing defendants in a North American Militia/NAM case. *See United States v. Graham*, 275 F.3d 490, 500 (6th Cir. 2001) ("The district court did, however, grant Graham's motion to sever defendants, although it denied his motion

4

to sever the drug-related counts, Counts 10, 11, and 14, from the firearm counts. Thus, Graham proceeded to trial alone, but on all counts against him.").

The weapons allegations here can stand independent of the supposed kidnapping conspiracy and vice versa. Mr. Franks faces no weapons charges. And the discovery in this case supports his contention that he participated in the trainings with his codefendants as a means to combat stress, enjoy camaraderie, and challenge himself physically—without any intention of participating in illegal conduct.

Indeed, the discovery related to bomb construction shows the role played by the government's CHSs and undercover agents in escalating matters (with explicit references to "Red," who was an undercover government agent). For example, a series of short videos shows an explosive device denotating and blowing up a Chevrolet vehicle; a man (known to be an undercover agent) holding up a supposed pipe bomb; and the same man mixing chemicals. "Red," an undercover agent, clearly pushes for the use of explosives in conversations with people like Adam Fox. But Mr. Franks *never* appears in any bomb-related videos or discussions. He was not present for any sort of bomb-related filming. Yet it seems exceedingly likely that the government will attempt to introduce at least some of the disturbing explosives footage here.

Distilling the matter, the charges against Mr. Franks involve a supposed plot to kidnap and hold for ransom the governor of Michigan. *See* RE. 172: Superseding Indictment, PageID # 961. The government has accused Mr. Franks of belonging to

5

the Wolverine Watchmen, attending field-training exercises in Wisconsin and in Luther, Michigan, and conducting "surveillance" of the governor's vacation home. *See id.* at 962-65. The indictment does not connect Mr. Franks with any weapons activities or offenses. *See id.* at 963 (accusing codefendants Croft, Harris, and Garbin of trying to detonate improvised explosive devices). The closest the superseding indictment comes to trying to link Mr. Franks to any explosives is in paragraph 19, which reads, "On or about October 7, 2020, ADAM DEAN FOX, KALEB JAMES FRANKS, DANIEL JOSEPH HARRIS, and Ty Gerard Garbin drove to Ypsilanti, Michigan, to meet the undercover FBI agent posing as a co-conspirator, and use the 'group cash' for a good-faith payment towards explosives and other supplies." *Id.* at 966.

Fox's, Harris's, and Croft's alleged weapons activities do not qualify as part of "the same act or transaction," or as part of the "same series of acts or transactions," that make up the charges against Mr. Franks. *Cf.* Fed. R. Crim. P. 8(b); *also compare* RE. 172: Superseding Indictment, PageID # 968 ("On or about September 13, 2020, BARRY GORDON CROFT, JR. and DANIEL JOSEPH HARRIS successfully detonated an improvised explosive device containing shrapnel near human silhouette targets to assess its effectiveness as an anti-personnel weapon."), 969 (charging Croft and Harris with illegal weapons possession). The weapons offenses charged against Mr. Franks' codefendants constitute inappropriately joined offenses in the indictment and would lead to a highly emotional trial, with evidence irrelevant to Mr. Franks tainting the proceedings against him.

B. *Joinder unfairly prejudices Mr. Franks, allowing for the admission of highly inflammatory evidence against codefendants when that evidence would have no relevance in a trial of Mr. Franks that did not include his codefendants' weapons charges.*

As already discussed, improper joinder can violate a defendant's Fifth Amendment right to a fair trial. *See, e.g.*, *Mann*, 701 F.3d at 290. When considering severance, courts should ask whether a joint trial presents a serious risk of compromising the specific trial rights of one of the defendants or whether such a trial would prevent the jury from making a reliable judgment about guilt or innocence. *Breinig*, 70 F.3d at 853. In *Breinig*, the Sixth Circuit found the standard satisfied. *Id.*

The trial in that case "took place against a backdrop of severe antagonism between the defendants." *Id.* at 852. The parties had divorced, and the hostility between them had preceded this divorce. *Id.* Each defendant denied responsibility for the subject tax evasion "and cast blame on the other." *Id.* The ex-wife "claimed that she lacked the capacity to form the requisite *mens rea* to have evaded taxes 'wilfully' because she was dominated and controlled by [her ex-husband]." *Id.* The ex-husband "claimed that because [his ex-wife] kept all the books and an accounting firm prepared their taxes, he had no knowledge of the underreporting." *Id.* The unfairness during trial resulted from "evidence the jury was permitted to hear and evaluate and which was, as to [the ex-husband], impermissible and highly inflammatory evidence of his bad character." *Id.* at 853. Expert evidence presented by the ex-wife "would have been inadmissible against [the ex-husband] under any theory of the Federal Rules of Evidence on a trial for tax evasion." The jury's

7

consideration of "categorically inadmissible evidence" created manifest, unfair prejudice. *Id.* It gave the government "an unfair windfall that the rules of evidence and elemental notions of fairness would otherwise not allow, and that Rule 8(b) does not envision." *Id.*

As the Supreme Court has said on this issue, "[m]utually antagonistic defenses are not prejudicial *per se*" and Rule 14 does not *require* severance based only on prejudice. *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). The rule does leave room for the district court to tailor relief. *Id.* at 539. But, as the court found in *Breinig*, some situations require severance.

The *Zafiro* Court laid the groundwork for the Sixth Circuit's decision in *Breinig*. As articulated in *Zafiro* (and later, in the Sixth Circuit, in *Breinig*), courts should grant severance when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* Such a risk can arise "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.*

In giving examples, the *Zafiro* Court pointed out that "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* When multiple "defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.* Evidence that has probative value

8

regarding one defendant's guilt, but which is "technically admissible only against a codefendant," can present a risk of prejudice. *Id.*

Mr. Franks recognizes that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *See id.* at 540. But that is not the argument he raises here. Instead, his case presents the *Zafiro* and *Breinig* examples of evidence of a codefendant's wrongdoing potentially leading a jury to convict another defendant, and of a complex case with very different degrees of alleged culpability heightening the potential risk of prejudice. *See id.* at 539. And it presents the potential for evidence that would be inadmissible against Mr. Franks coming in and prejudicing him. *See id.*

Here, Mr. Franks' codefendants face charges under 18 U.S.C. § 2332a, a section entitled "Use of Weapons of Mass Destruction." *See* RE. 172: Superseding Indictment, PageID # 967-68 (citing § 2332a). Violations of § 2332a explicitly constitute "federal crimes of terrorism." *See* 18 U.S.C. § 2332b(g)(5)(B). Congress and jurists recognize that "terrorism" constitutes "a phrase which carries far-reaching connotations" and "is not to be used indiscriminately and must be carefully defined." *See Graham*, 275 F.3d at 537 (Cohn, J., dissenting). Yet if Mr. Franks must stand trial with his codefendants, he will find himself in the midst of a whirlwind of weapons-of-mass-destruction-related terrorism terms, an avalanche of bomb-related videos, and lengthy discussions about codefendants supposedly detonating explosives, with none of the evidence actually directed at him but all of it coloring him in the eyes of the jury.

9

In the situation at hand, no "measure less drastic than a separate trial will suffice to cure any potential risk of prejudice." *Cf. Breinig*, 70 F.3d at 853. A limiting instruction simply cannot undo the terror inspired by terms like "weapon of mass destruction" and . . . well . . . terrorist. *Cf. id.*[2] Defendants have the right to have their cases determined based on their own conduct and any evidence applicable to them—not the conduct of others and not evidence applicable only to others. *Compare Zafiro*, 506 U.S. at 541. With the inherently inflammatory issue of weapons of mass destruction taking center stage here, Mr. Franks will not enjoy that right if tried with his codefendants Fox, Croft, and Harris.

## *Conclusion*

Given all the allegations in the superseding indictment, forcing Mr. Franks to stand trial with codefendants Fox, Harris, and Croft would violate Mr. Franks' constitutional rights and the federal rules governing criminal procedure.

                              Respectfully submitted,

Date: July 12, 2021           **SCOTT GRAHAM PLLC**

                              By:   /s/ Scott Graham
                                     Scott Graham
                                     Attorney for Defendant
                            Business Address:
                                     1911 West Centre Avenue, Suite C
                                     Portage, Michigan 49024
                                     (269) 327.0585

---

[2] While the government has used the term "terrorism" in the indictment and in relation to count one (related to the supposed kidnapping conspiracy), it is far from clear that count one would allow for use of the term, and the defense will object to use of the term should the government try to use it in front of the jury. *See, e.g.*, U.S.S.C. § 3A1.4, comment. (n.1) (discussing the definition of "federal crime of terrorism"); *see also* 18 U.S.C. § 2332b(g)(5) (including certain weapons offenses in the definition of "federal crime of terrorism" but omitting offenses under 18 U.S.C. § 1201).

# **CERTIFICATE OF COMPLIANCE**

In accordance with Local Criminal Rule 47.2(b)(ii), counsel asserts that this brief contains 2,537 words, as counted by Microsoft Word, version 16.50.

Dated: July 12, 2021

By: /s/ Scott Graham
    SCOTT GRAHAM
    Attorney for Defendant
Business Address:
    1911 West Centre Avenue, Suite C
    Portage, Michigan 49024
    (269) 327.0585
    sgraham@scottgrahampllc.com