UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

v.

KALEB JAMES FRANKS,

    Defendant.
_____/

CASE NO. 1:20-CR-183

HON. ROBERT J. JONKER

## **ORDER**

Defendant Franks moves for change of venue based on presumed prejudice tied to pretrial publicity, including reported statements from Michigan's Governor, who was the target of the alleged kidnapping conspiracy charged in Count 1 of the Superseding Indictment. There has certainly been publicity, public interest and ongoing commentary from many, including the Governor. But nothing identified by defendant meets the intentionally high standard of presumed prejudice. To the extent defendant is seeking change of venue based on actual prejudice, any such assessment needs to await the actual jury selection process.

Venue generally lies in the district where the alleged offenses were committed, which includes the Western District of Michigan. Rule 18. Under Rule 21(a), the Court must grant a defense motion for transfer "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Presumptive prejudice can arise when pretrial publicity creates "an inflammatory, circus-like atmosphere [that] pervades both the courthouse and the surrounding community," *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2005), or when the trial atmosphere is "utterly corrupted by

press coverage." *Ritchie v. Rogers*, 313 F.3d 948, 955 n. 11 (6th Cir. 2002). Cases of presumed prejudice are exceedingly rare. *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998). Pretrial publicity, standing alone, does not create a presumption of prejudice. *United States v. Sypher*, 684 F.3d 622, 627 (6th Cir. 2012).

Defendant has not made the case for presumptive prejudice. The press and the public have definitely showed sustained interest, but both the press and the public have conducted themselves decently and in good order. The courthouse has been able to accommodate interested members of the press and public—including some overflow capacity when needed. There have been no incidents of trouble, much less anything resembling a circus. The legal process has been able to proceed with deliberation and calm; the press has been able to provide appropriate coverage; and interested members of the public have been able to observe and draw their own conclusions.

Moreover, the reporting has not been uniformly hostile to either side. Many commentators and public officials, including the Governor, have decried the violence and threats of violence, as alleged in the case. The press has reported testimony and exhibits presented in open court about statements and actions attributed to one or more of the defendants that, if true, are genuinely disturbing. But there has been no rush to judgment or steamrolling over constitutional rights. To the contrary, other commentators and press reports have provided information regarding the number of government agents and informants involved, and some have questioned how much of a push these players may have given to the defendants. More recent reporting has focused on an unrelated domestic violence charge now pending against one of the agents who worked the case. In short, there has been plenty of balance in the publicity.

It is true, of course, that the Michigan public is naturally familiar with and interested in Michigan's Governor. But the publicity regarding the case has not been limited to Michigan

locales.  It has generated national—even international—interest.  Moreover, the Governor became a national figure in her own right well before this case arose.  And as every national politician learns from experience, some people like you and others do not.  So there will be balance in that too.  Indeed, the underlying policy issues that potentially gave rise to some of the hostility the government alleges these defendants had toward the Governor continue to churn our politics throughout the country at state, local and national levels.  Transfer to another district would not likely change the level of public or media interest.

To the extent defendant is trying to support transfer based on actual prejudice, even defendant appears to recognize the actual jury selection is the place to test that theory.  ECF No. 230, at PageID.1269.  And that is certainly what the law requires.  *Foley*, 488 F.3d at 387.  The parties and the Court are evaluating jury selection procedures for the case.  The Court fully expects that a jury of fair-minded citizens of the Western District will be seated and able to evaluate and decide the case in a way that honors the rights of all involved.  If not, the defense will have the opportunity to make a case of actual prejudice at that time.

Accordingly, the motion to change venue, ECF No. 230, is **DENIED**.


Dated:  __August 27, 2021__          /s/ Robert J. Jonker
　　　　　　　　　　　　　　　　　　　ROBERT J. JONKER
　　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE