THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

KALEB JAMES FRANKS,

    Defendant.

Case No. 1:20-CR-183

Hon. Robert J. Jonker
Chief U.S. District Court Judge

---

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO ADMIT EVIDENCE UNDER RULE 404(b)**

---

The government has asked the Court to allow it to present at trial evidence related to supposed "other acts" (to allegedly show "predisposition"), citing Federal Rule of Evidence 404(b). *See* RE. 370: Gov. Motion to Admit, PageID # 2440-47. Mr. Franks now offers the following memorandum of law to support his objection to the government's motion. He incorporates here by reference the arguments made in the defendants' motion to dismiss. *See* RE. 379: Motion to Dismiss, PageID # 2518-36. As the Court is, at this point, quite familiar with the facts and the procedural posture of this case, Mr. Franks will forgo reciting that background.[1]

---

[1] As Mr. Franks and his codefendants have recently explained to the Court, the government's latest production of discovery has been remarkably delayed from the anticipated September production time. *See, e.g.*, RE. 383: Motion to Admit Statements, PageID # 2556 n.3; RE. 385: Motion to Continue, PageID # 2622-23. The defense still has not received these new discovery materials from the discovery coordinating team in New York. The materials amount to some 385 or 386 gigabytes and could conceivably contain additional information related to the topics covered here, such as criminal history or the alleged "*partially manufactured firearms.*" Should the defense uncover relevant information while reviewing this new material, it would ask the Court to allow for presentation of that information.

*Legal Discussion*

Federal Rule of Evidence 404(b) provides a *default* rule barring admission of evidence of other crimes, wrongs, or acts. *See* Fed. R. Evid. 404(b)(1). Such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* Such evidence *may* be admissible for another purpose, like "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b)(2).

This *exception* to the general rule precluding admission applies in "limited circumstances." *See, e.g.*, *United States v. Mtola*, 598 F. App`x 416, 420 (6th Cir. 2015). And those circumstances, according to case law and common sense, do not exist here. The Supreme Court, for one, has made it clear that other-acts evidence in the entrapment context has no relevance unless related to activity similar to the charges at hand. In *Jacobson v. United States*, for example, the Court noted that government internal guidelines of the time provided direction for undercover operations and clarified "that an inducement to commit a crime should not be offered unless" reasonable indications existed showing "that the subject is engaging, has engaged, or is likely to engage in illegal activity of a *similar type*." *Jacobson v. United States*, 503 U.S. 540, 549 n.2 (1992) (emphasis added).

In considering entrapment and predisposition, the Sixth Circuit looks to five factors, as discussed, for example in *United States v. McLernon*, 746 F.2d 1098, 1114, 1126 (6th Cir. 1984), where the court found entrapment as a matter of law.

The *McLernon* court analyzed these factors as "relevant to determining a defendant's prior disposition," including: (1) the character or reputation of the defendant (including a relevant prior criminal record); (2) whether the government made the initial suggestion to engage in criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement/persuasion; and (5) the nature of the inducement/persuasion provided by the government. *See McLernon*, 746 F.2d at 1112.

As discussed in the defendants' joint motion to dismiss filed just a few days ago, the evidence here comes up completely wanting in the predisposition arena (and indicates the defendants' marked reluctance to participate in the schemes and activities suggested by the government's agents and informants). And the government's proffer of an eight-and-a-half-year-old home invasion involving theft of "money and a checkbook" can hardly alter or even contribute to the predisposition equation for Mr. Franks. *Cf.* RE. 370: Gov. Motion to Admit, PageID # 2442.

Police reports of the incident indicate that the home involved was that of Mr. Franks's step-uncle, and that the money taken amounted to about $300 in change, removed from a plastic "change bank"/"change bottle." So Kaleb Franks snuck into his step-uncle's home (right next door to his mother and step-father's home) and pinched a bunch of loose change. At the time, Kaleb was abusing heroin. Now, of course, he has an exemplary record of getting himself clean and sober, as explored further below.

3

The event's lack of relevance glows even brighter in the light of the offense's HYTA (Holmes Youthful Trainee Act) disposition, a disposition that ultimately resulted in the charge's dismissal. *See, e.g.*, RE. 57: Motion for Rev. of Detention Order, PageID # 404. (With regard to a 2011 possession-of-cocaine conviction, Mr. Franks got that conviction expunged, so he does not have any sort of felon status. *See id.*)

As an elementary matter, predisposition cannot mean simply a predisposition to do wrong. Many things society might consider wrong do not qualify as criminal offenses (we no longer condemn fornicators to corporal punishment, even if they were cheating on their longsuffering spouses). Likewise, many offenses simply don't raise a lot of modern eyebrows (or at least don't seem like they should involve criminal sanctions in certain circumstances): for example, Michigan's indecent-exposure law provides for a one-year misdemeanor if one skinny dips in a rustic, secluded lake with other consenting adults. *See* M.C.L. § 750.335a(1) (criminalizing the open exposure of one's person). Without wandering too far into the jurisprudential weeds, then, predisposition must be read with due regard for the inherent subjectivity of defining what it means to be inclined to wrongdoing.

A *malum in se* offense, one that is "naturally evil," of course, certainly bears little resemblance to its foil, the *malum prohibitum* offense that society has simply declared illegal (e.g., driving on the wrong side of the road). And Jean Valjean's theft of bread to feed children in his family certainly stands apart from guillotine-

4

ing thousands in the name of revolution, even if one act was technically illegal and the other sanctioned by leaders.

So predisposition cannot relate to a predisposition to engage in *any* sort of law breaking or "wrongdoing." It simply wouldn't make sense to read the concept so broadly, and courts have rejected that tack. *See, e.g.*, *United States v. Bramble*, 641 F.2d 681, 682 (9th Cir. 1981). Taking a few more examples, a student's yen for smoking a joint (still a federal crime, regardless of state legalization) cannot compare to an inclination to kidnap, engage in human trafficking, or organize a scheme to defraud retirees with dementia of their life savings.

The law in this entrapment context supports making even finer distinctions. The Supreme Court has rejected government efforts to show predisposition through older criminal convictions, even when those convictions *did* resemble the charge at issue. In *Sherman v. United States*, 356 U.S. 369, 375 (1958), the Court acknowledged the government's "additional evidence" that it presented to try show that the defendant had been "ready and willing to sell narcotics should the opportunity present itself," namely the defendant's two past narcotics convictions. But "a nine-year-old [drug] sales conviction and a five-year-old [drug] possession conviction are insufficient to prove petitioner had a readiness to sell narcotics at the time [the informant] approached him, particularly when we must assume from the record he was trying to overcome the narcotics habit at the time." *See id.* at 375-76. Even the concurrence in *Sherman* (a concurrence that saw fundamental jurisprudential issues differently from the majority) recognized that predisposition

5

involves "a general intention or predisposition to commit, whenever the opportunity should arise, crimes *of the kind solicited*." *See id.* at 382 (Frankfurter, J., concurring) (emphasis added).

Justice Frankfurter, in concurring in *Sherman*, emphasized the prejudice that defendants can face in these circumstances, the possibility that a defendant looking at the government's predisposition evidence might have to consider forgoing the claim of entrapment versus running "the substantial risk that, in spite of instructions, the jury will allow a criminal record or bad reputation to weigh in its determination of guilt of the specific offense of which he stands charged." *Id.* The justice admonished that "a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment." *Id.* Regardless of "the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society." *Id.* at 382-83 (Frankfurter, J., concurring).

Critically for the purposes of this response, "[t]he possibility that no matter what his past crimes and general disposition the defendant might not have committed the particular crime unless confronted with inordinate inducements, must not be ignored." *Id.* at 383 (Frankfurter, J., concurring). "Past crimes do not forever outlaw the criminal and open him to police practices, aimed at securing his repeated conviction, from which the ordinary citizen is protected." *Id.* Likewise, past crimes and prior bad acts do not equate to predisposition to commit new crimes.

6

Courts within the Sixth Circuit have followed this guidance on other-acts evidence needing to relate to current charges to be admissible. In *United States v. Hood*, 811 F. App`x 291, 297 (6th Cir. 2020), for example, the Sixth Circuit noted that, "[a]lthough [the defendant's] internet search history may [have] demonstrate[d] an inclination to view lewd images of teenage girls—pageant contestants no less—it hardly demonstrate[d] a predisposition to violate the law by having sexual relations with minors."

### A. *Mr. Franks 2013 home-invasion conviction lacks any sort of relevance and bears absolutely no resemblance to the current charge, making it useless for consideration of any possible "predisposition."*

In considering Rule 404(b) generally (not necessarily in this specific entrapment/predisposition context), courts consider several factors. As the Sixth Circuit has said, "Prior bad acts, including prior convictions, can be admitted under Rule 404(b), which requires (1) use of evidence for a proper purpose (that is, other than as character or propensity evidence), (2) relevance, (3) that the evidence not be substantially more unfairly prejudicial than probative pursuant to Rule 403, and (4) that the court give a limiting instruction, if requested, such that the jury will only consider the evidence for the proper purpose rather than as character or propensity evidence." *See United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).

Considering these factors in this context, the government simply can't shoehorn Mr. Franks's prior home-invasion adjudication into the mold for admission. First, the adjudication bears no resemblance to the charged offense, so it has no value with regard to showing propensity. This lack of value then renders it

7

irrelevant. And without any probative value, its potential to cause prejudice comes to the forefront.

While Mr. Franks had a troubled young-adulthood, his prior home-invasion conviction completely lacks relevance here where it will be almost nine years old at the time of trial and bears absolutely no resemblance to the current charge against Mr. Franks. The records from the 2013 offense indicate it did *not* involve forced entry. Basically, while still battling his drug-related demons, Mr. Franks snuck into his step-uncle's home and stole a bunch of loose change and some checks.

The home-invasion incident bears no resemblance to the sort of "other acts" that the Sixth Circuit has said can indicate predisposition. It looks nothing like the paperback books describing, explicitly, minors engaged in sexual activity, as in *United States v. Nelson*, where "[t]he seized paperbacks [we]re relevant as to whether or not [the defendant] was predisposed to send for pedophilic materials." *See United States v. Nelson*, 847 F.2d 285, 288 (6th Cir. 1988). Unlike those books, the home invasion here offers nothing with regard to violence, abduction, or overthrowing the governor.

In the almost nine years since he sustained that adjudication (treated under HYTA), Mr. Franks has pursued a rehabilitation-oriented career, working at Meridian Health Systems, in the area of drug and alcohol treatment. *See* RE. 57: Motion for Rev. of Detention Order, PageID # 404. Before his arrest on the instant charge, he had worked there for four years. *Id.* He was also volunteering with Families Against Narcotics, and working with the 6th Circuit Court in Pontiac,

8

helping probationers with drug addiction. *Id.* Along with all this, Mr. Franks was working with Rise Up Recovery. *Id.* Once a heroin user, Mr. Franks has been sober since he went to jail for the home-invasion adjudication in 2013. *Id.* Using his own past experiences as background, he had turned to helping others struggling with addiction; he represents the ideal of a once-drug-offender turning his life around. *Id.*

With regard to associates, since February 29, 2018, Mr. Franks has owned a house in Waterford, Michigan, where (before his arrest here) he was living with his fiancée and her mother. *See id.* If the "central inquiry" in an entrapment case is whether authorities "implanted a criminal design" in the mind of an otherwise law-abiding person or whether the government merely provided an opportunity to commit an offense to one who is already predisposed to do so, Mr. Franks's life in the last eight years is one of law-abiding, productivity. *See Nelson*, 847 F.2d at 287 (citing case law). The idea that this prior offense of stealing change from an uncle could indicate predisposition to conspire to kidnap a governor baffles counsel.

> **B.** ***The government's own evidence shows that the supposed "partially manufactured firearms" have no relevance in the "predisposition" context; taking that evidence in the light most favorable to the government, the allegations show merely a profit motive and no predisposition toward violence or crimes against persons.***

The same weaknesses undermine the government's arguments related to the so-called "*partially manufactured firearms*": the government's allegations (and Mr. Franks make no concessions regarding those allegations) show, at best for the government, a profit motive. *See, e.g.*, RE. 370-2: Attach. 2, Gov. Motion to Admit, PageID # 2450. Nothing the government has presented indicates a predisposition

9

toward violence, kidnapping, harming or threatening others, or even committing any sort of trespass or property damage.

Courts have long rejected arguments like the government's, such mental gymnastics aimed at turning a criminal record in general, or some other poor decision making, into predisposition to commit the charged crime. Forty years ago, in *United States v. Bramble*, the Ninth Circuit was clear: "possessing marijuana is not a similar offense to selling heroin, and that it was therefore reversible error to admit into evidence an earlier conviction of possession of marijuana for the purpose of proving intent to sell heroin," and a conviction for possessing of marijuana is not probative of predisposition to sell cocaine. *Bramble*, 641 F.2d at 682-83.

A willingness to illegally sell a firearm, to make some extra cash, does not show predisposition to terrorize or kidnap someone. The Sixth Circuit said as much in *Hood*, when it cited the Supreme Court's decision in *Jacobson*, discussed above, which "makes clear that what matters is the *severity* of the pre-inducement conduct in relation to the crime attempted." *Hood*, 811 F. App`x at 297. Indeed, the *Hood* court admonished the government that it is not free to induce more-serious crimes simply because its target may have already committed a lesser offense. *Id*.

These gun allegations (and the home invasion) hardly compare in severity to the charge here. Nor do these gun allegations qualify as res gestae evidence. *See, e.g.*, *Mtola*, 598 F. App`x at 420 (discussing how Rule 404(b) and background/*res gestae* concepts may provide "alternative grounds for admission"). The allegations presented by the government do not touch on the charged conspiracy. That

10

conspiracy is not "intertwined" with the gun allegations. This sort of "propensity evidence" is just the sort of thing the rules of evidence protect against.

### C. Even if the Court finds that this evidence could be admissible, Rule 403 militates against its admission.

Should the court decide that the government's proffered evidence is relevant and otherwise admissible, the Court should still exclude it since "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.

Rule 404(b) protects people from the very real risk that a jury may punish them for old, unrelated wrongdoing . . . or conclude that "once a criminal, always a criminal." Courts have long warned of this risk, which falls squarely within the circle of Rule 403's parallel protections. *See, e.g.*, *Stout*, 509 F.3d at 801 (including a district court's observation that prior-bad-acts evidence can carry the potential for prejudice because it can be both inflammatory and distracting; while the prior bad acts in that case were "creepier" than the charged conduct, the fact remains that prior acts carry the kind of prejudicial potential Rule 403 aims at). A Rule 403 weighing must occur before a court admits prior-/other-acts evidence. *See, e.g.*, *Bramble*, 641 F.2d 683.

The government hardly needs this evidence. *Compare Stout*, 509 F.3d at 800 (considering government's need for evidence). The evidence adds nothing of any value with regard to whether the defendants conspired to kidnap the governor. While it may show that a young and troubled Mr. Franks stole change from a

11

relative, it hardly shows that he was lawless, violent, inclined to engage in high-risk behavior, or prone to being notably anti-social—and was somehow predisposed to kidnapping. And even if the government "needed" this evidence, that need alone cannot establish admissibility. As the *Stout* court reasoned, "While it is true that the government's need for the evidence should be weighed along with its probative value to determine whether it should be admitted under Rule 403, the need for the evidence does not make the evidence more likely to prove that which it is offered to prove." *Id.* "Probative value and need for the evidence are separate considerations that weigh in favor of admission under the Rule 403 balancing test." *Id.* Here, neither need nor probative value exist, and the risk of unfair prejudice is high.

## *Conclusion*

Criminal history and "other acts," considered in the entrapment and predisposition context, must be similar to the charge at hand. Otherwise, they are simply irrelevant. In Mr. Franks's case, a nearly nine-year-old minor home-invasion charge (involving a young man stealing change from an uncle) has absolutely no relevance with regard to an alleged predisposition to kidnap a governor. Likewise, the supposed "*partially manufactured firearms*" mean nothing here because the evidence shows that if Mr. Franks participated in such a scheme it was only to obtain money and involved nothing more than an attempt at an illegal sale.

The government should not be allowed to circumvent Rule 404(b) and introduce evidence of "other acts" to do exactly what Rule 404(b) prohibits: try to show "that on a particular occasion the person [allegedly Mr. Franks] acted in

12

accordance with the [supposed bad] character" the government thinks the "other acts" prove. *Compare* Fed. R. Evid. 404(b)(1). (Should the Court decide to admit the evidence, Mr. Franks does ask the Court to give the jury a limiting instruction. *See, e.g.*, *Stout*, 509 F.3d at 799.) As the case law affirms, the predisposition question does *not* create a "free for all" for presenting criminal history, other bad acts, and the like to prove a general penchant for wrongdoing.

 

Respectfully submitted,

Date:  December 31, 2021     By:   /s/ Scott Graham
                                                    Scott Graham
                                                    Attorney for Defendant Franks
                                        Business Address:
                                                    1911 West Centre Avenue, Suite C
                                                    Portage, Michigan 49024
                                                    (269) 327.0585
                                                    sgraham@scottgrahampllc.com

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Criminal Rule 47.2(b)(ii), counsel asserts that this brief contains 3,248 words, as counted by Microsoft Word, version 16.54.

                                        Respectfully Submitted,

                                        By: /s/ Scott Graham

Dated: December 31, 2021          SCOTT GRAHAM
                                              Attorney for Defendant Franks
                                      Business Address:
                                              1911 West Centre Avenue, Suite C
                                              Portage, Michigan 49024
                                              (269) 327.0585
                                              sgraham@scottgrahampllc.com