THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

THE UNITED STATES OF AMERICA,

        Plaintiff,

v.

KALEB FRANKS,

        Defendant.

Case No. 1:20-CR-183

Hon. Robert J. Jonker
Chief U.S. District Court Judge

### DEFENDANT'S MOTION TO COMPEL PRODUCTION OF JAIL-CALL RECORDINGS AND MEMO IN SUPPORT

In anticipation of the start of trial on March 8, 2022, Mr. Kaleb Franks now asks the Court to order disclosure of jail-call recordings (and emails/texts if there are any[1]) for incarcerated defendants (in state or federal matters) who will testify for the government. In support of this motion, he offers the following memorandum of law.

### *Legal Discussion*

While jail calls, especially in the last decade, have represented contentious territory in terms of discovery, *Brady* obligations, and subpoena powers, courts have increasingly recognized defendants' rights with regard to obtaining call recordings.

---

[1] Courts recognize the potential for ordering production of letters and emails sent from custodial facilities if evidence suggests copies are available. *See, e.g.*, *United States v. Benanti*, No. 3:15-CR-177, 2017 U.S. Dist. LEXIS 2101, at *1 n.1 (E.D. Tenn. Jan. 6, 2017) (unpublished). In *Benanti*, though, evidence did not suggest the defendants in question had sent any letters or emails while incarcerated, or that copies would be available.

In *United States v. Benanti*, No. 3:15-CR-177, 2017 U.S. Dist. LEXIS 2101, at *3 (E.D. Tenn. Jan. 6, 2017) (unpublished), for example, the trial court found that the contested jail calls (those between a codefendant and his girlfriend) fell under *Jencks* and ordered the government to produce them.

The government can't review materials like these to assess whether they fall under *Brady*.[2] For example, in *United States v. Benanti*, the prosecution had listened to the recordings and concluded that "they contained nothing helpful to the defense." *See Benanti*, 2017 U.S. Dist. LEXIS 2101, at *3. The court, however, saw things differently and "strongly encouraged" the government to produce the calls two weeks before trial, to give the defense time to listen to the fifteen hours of recordings. *See id.* at * 11-*12.

A year after *Benanti*, a court in the Eastern District of California similarly ordered production of jail calls. In *United States v. Habash*, No. 1:15-CR-286, 2018 U.S. Dist. LEXIS 14970, at *24 (E.D. Cal. Jan. 30, 2018) (unpublished), the court granted a defense motion to obtain jail calls. It reasoned that, while the government contended it did not have the jail calls, the government had produced some of the calls, so it appeared the government had "some control over obtaining the jail calls, and therefore, the jail calls should be produced." *Habash*, 2018 U.S. Dist. LEXIS 14970, at *24. In *United States v. Mills*, No. 16-cr-20460, 2019 U.S. Dist. LEXIS

---

[2] Courts have noted that even seemingly *inculpatory* materials may be discoverable by the defense in certain circumstances. *See, e.g.*, *United States v. Pesaturo*, 519 F. Supp. 2d 177, 189 (D. Mass. 2007) ("Although the content of the conversations appears to undermine the defense, under Rule 16 the Defendant is entitled to relevant evidence, even if inculpatory. He need not show that the statements are material or exculpatory.")

2

146007, at *13, *19 (E.D. Mich. Aug. 28, 2019) (unpublished), with regard to the defendant's statements, the government simply agreed to "promptly produce any future statements, including recorded jail calls." Even in the non-*Brady* context in *Mills*, the court ordered production of codefendants' jail-call statements at least sixty days before trial (and production of *Jencks* material at least thirty days before trial). *See Mills*, 2019 U.S. Dist. LEXIS 146007, at *18-*20.

In *Anderson v. City of Rockford*, 932 F.3d 494, 498 (7th Cir. 2019), the Seventh Circuit considered an action under 42 U.S.C. § 1983. The appellate court found that the district court had erred by rejecting the plaintiffs' contention that a *Brady* violation (related to other violations) occurred with the delayed disclosure of a cooperator's recorded jail calls. *Anderson*, 932 F.3d at 508. The recordings contained some forty hours of conversations between the cooperator and his family and friends. In them, the cooperator "told his family and friends that he was not present when his nephew was shot; he was threatened with additional charges if he failed to cooperate; he was physically threatened by police; and he was coached on what to say to police." *Id.* "Without question this evidence [wa]s both favorable and material to the plaintiffs." The appellate court found that the plaintiffs had come forward with enough to survive summary judgment on a *Brady*-violation claim. *Id.*

These instant circumstances involve Mr. Franks asking for the jail-call materials, and clear government possession of/access to them. *Cf. United States v. Guerrero*, 768 F.3d 351, 363-64 (5th Cir. 2014) (noting that the defense had failed to seek production of the disputed discovery materials (including the defendant's

3

brother's jail calls) during trial, and that this failure had deprived the district court of an opportunity to take the necessary steps to determine whether the materials were in the government's possession).

Another example of a defense request for cooperator jail calls ending in an agreement for the government to turn call recordings over comes in *United States v. Muschette*, 392 F. Supp. 3d 282 (E.D.N.Y. 2019). In anticipation of trial, the defense "requested 'the jail calls for all of the cooperators'" to determine whether cooperating witnesses had talked about the subject murder on the phone while in custody. *Muschette*, 392 F. Supp. 3d 282 at 289. At a status conference before a magistrate judge, the prosecution in that case indicated that it was prepared to turn over the recorded telephone calls of its cooperating witnesses—that is, the calls it currently had in its possession. *Id.* The government did disclaim having calls from the four months before and four months after the murder because the Bureau of Prisons supposedly only retained calls for six months. *Id.* At a subsequent conference, the prosecution confirmed it had provided the defense with all of the recorded telephone calls in its possession." *Id.*

The rub in the case came when the prosecution, post-trial, notified the defense that it had located more than 400 additional recordings of calls. *Id.* The defense then brought a Rule 33 motion for a new trial, alleging *Brady* violations. *Id.* at 290. In declining to order a new trial based on a *Brady* violation, the district court found that the defendants had already had a video that featured a cooperating witness confessing to his involvement in the murder; the defense did not use this

4

video during trial. *Id.* at 296. The defense had already known a number of facts about the cooperator, including his perception of the murder victim as a cooperator in that victim's own right, and that the cooperating witness at issue had had obstruction-of-justice charges filed against him. *Id.* Thus, a lack of access to the withheld jail calls had not crippled the defense. *Id.* The district court also found that the defense had presented an "extraordinarily attenuated and implausible" *Brady* claim, the nature of which was such that it was "hardly clear an objectively reasonable prosecutor should have recognized the calls as having exculpatory or impeachment value." *Id.* at 297. Otherwise, it seems that the calls could have been fair game from a discovery perspective. *See id.* at 295 (explaining that the defense's claim failed only "[b]ecause the calls were not suppressed and are cumulative, immaterial, or both").

The weaknesses found in the defense's position in *Muschette* do not plague Mr. Franks's stance. Given the looming entrapment defense and the evidence of government overreaching in the investigation, jail calls from codefendants in this matter and defendants in related cases (people like Bill Null, charged in Antrim County, and Barry Croft, who thought of Mr. Franks as just some young guy from Michigan) would relate to major points. First, with the recent arrival of the latest discovery materials, counsel has reviewed post-arrest statements from numerous individuals. These statements often involve a defendant expressing surprise that Kaleb Franks ended up a suspect since he wasn't involved in the government's supposedly key activities. Second, these statements also involve people affirming

5

that CHS Dan led the group and led activities. Third, many individuals making statements did not know Kaleb Franks at all or did not know him well.

So jail calls present a means of establishing Mr. Franks's lack of participation in the alleged conspiracy, Mr. Franks's lack of any sort of leadership role, and a CHS's unequivocal leadership role. Unlike in *Muschette*, these calls can confirm these points. They can provide a means for Mr. Franks to establish his lack of participation in any planning or wrongdoing. Defendants calling loved ones and supporters generally discuss the charges against them, the people involved in their cases, and the events that led to their arrests. They may also discuss the government's pressure on them to cooperate and any statements they have made to the government. Given the tenuous, limited mention of Mr. Franks in many defendants' statements so far, jail calls would likely establish Mr. Franks's non-participation in the events, discussions, and supposed "planning" the government has presented as critical to its charges here and in the related state cases. The calls could also reveal government pressures to cooperate and/or inconsistencies in statements/anticipated testimony.

Simply, the calls will provide material Mr. Franks does not already have. Unlike in *Muschette*, the defense here does *not* recognize "that the calls prove little on their own." *See id.* at 298. (The *Muschette* decision does still represent an example of the government and court addressing with the defense cooperator jail calls, and the government turning over the call recordings it obviously had in its possession at the time.)

Taking in the jail-call landscape as a whole, the government has access to recorded jail calls. One-way government access to these calls presents significant issues on various levels, but in Mr. Franks's case, the problem is compounded because evidence like people's post-arrest statements suggests that Mr. Franks's federal codefendants' calls, and cooperating state defendants' calls, include statements to the effect that CHS Dan led the group and Kaleb was not involved. Because of the exculpatory nature of this evidence, and because the government has access to these calls, the government should produce copies of these call recordings for Mr. Franks's review.

*Conclusion*

Jail calls are discoverable. Mr. Franks asks the court to produce all recorded jails calls and copies of messages (like JPay emails) for cooperators and defendants charged in state proceedings.

Respectfully submitted,

Date: January 14, 2022     **SCOTT GRAHAM PLLC**

By: /s/ Scott Graham
    Scott Graham
    Attorney for Defendant
Business Address:
    1911 West Centre Avenue, Suite C
    Portage, Michigan 49024
    (269) 327.0585

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Criminal Rule 47.2(b)(ii), counsel asserts that this brief contains 1,692 words, as counted by Microsoft Word, version 16.56.

                          Respectfully Submitted,

Dated: January 14, 2022

By: /s/ Scott Graham
    SCOTT GRAHAM
    Attorney for Defendant
Business Address:
    1911 West Centre Avenue, Suite C
    Portage, Michigan 49024
    (269) 327.0585
    sgraham@scottgrahampllc.com