UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      No. 1:20-cr-183

    vs.                                Hon. Robert J. Jonker
                                            Chief United States District Judge

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.,
DANIEL JOSEPH HARRIS,
KALEB JAMES FRANKS, and
BRANDON MICHAEL-RAY CASERTA,

        Defendants.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

      The Sixth Circuit disfavors pretrial motions to dismiss based on an entrapment defense because the defense focuses on a defendant's state of mind, an evidentiary question for the jury. To find entrapment as a matter of law, there must be undisputed evidence of inducement and a patently clear absence of predisposition. The defendants have alleged, but not proven, any inducement. More importantly, the government has yet to put its ample evidence of predisposition to the finder of fact.

FACTS

      1.      On December 25, 2021, the defendants filed a joint motion to dismiss the superseding indictment. (R. 379: Motion to Dismiss). They reprise claims of

entrapment alleged in numerous previous pleadings, and claim they "never agreed" to the kidnapping plot. (*Id.,* PageID.2527.) Defendant Franks filed a supplemental pleading arguing that FBI agents' opinions about a CHS can, without more, establish entrapment as a matter of law. (R. 399: Def's Supplemental Br., PageID.2785, 2790.)

2. The defendants' briefs elide known facts undermining their narrative of inducement, including facts tending to show their predisposition. For instance, they present statements of co-defendant Ty Garbin as supposed proof that they "rebuffed" or "repudiated" the notion of kidnapping. (R. 379: Def's Mot., PageID.2525.) But Garbin pled guilty to the kidnapping plot and implicated all of them as knowing co-conspirators. (R. 142: Plea Agreement, PageID.745-51.)

3. At trial, the government will present substantial evidence that the plot originated with Croft and Fox, that the conspirators all joined the plot voluntarily, and that they were all predisposed to commit the crimes with which they are charged. For example:

a. In a chat on May 1, 2020 that involved no government informants, and pre-dated the conspiracy by more than a month, Harris told fellow Wolverine Watchman Pete Musico, "I can make things go boom if you give me what I need. I think I have the algorithm for timing det cord[1] somewhere in my office." He added, "[P]retty sure if the founding fathers saw how shit was being run they'd be looking at us like 'wtf, kill them.'" Musico proposed arresting the Governor for

---

[1] Detonation cord, used for time-delayed detonation of explosive devices.

2

treason, but observed that the media might not be on their side. Harris said, "Regardless of what we did the media would spin it in a way that looks bad on us. Personal opinion: shouldn't let it stop us from doing what we think is right."

      b.      On May 19, 2020, weeks before he met any government informants, Fox sent the following Facebook voice message to a non-informant subject in another state: "I don't know, man, this stays between me and you, but I'm working with some dudes from all over the state, trying to put together a team, get some shit going, man. We need to get these fucking governors and arrest them and put 'em on trial for their crimes and their violations of the Constitution. Fucking sheriffs ain't gonna do it, but I don't seem, we can't seem to get any constitutional sheriffs to go arrest her, so we're gonna have to do it the fucking, whole, citizens' arrest way."

      c.      On June 6, 2020, Croft and Fox both attended a "national militia meeting" in Dublin, Ohio. Croft enthusiastically advocated kidnapping Governor Whitmer, and told the assembled crowd that God gave him permission to commit acts of terrorism. (*See,* R. 254: Opinion and Order, PageID.1385-86.) At the time, Croft already had "We The People" and "Expect Us" tattooed on his forearms, and the logo of the "Three Percenter" anti-government militia on his hand. Croft later explained his plan to the informant he now claims entrapped him: "Wham! A quick precise grab on that fucking governor. And all you're going to end up having to possibly take out is her armed guard. Whitmer. Whitmer. Michigan. Whitmer. Her armed guard … But see, here's the thing. If that precise group of seven men are

3

prepared for the job, I put three of them as snipers with FLIRs,[2] so they're fucking shooting at heat signatures, dropping those fucking armed guards before we even broach the fucking house. All that's left leaving is her, understand?"

    d.    On June 14, 2020, Fox had his first discussion with the CHS he now claims entrapped him, in order to set up a meeting between himself and the Wolverine Watchmen. When the CHS asked what they would be discussing, Fox replied:

> Fox: I'm actually kind of serious about this. But I want to have the governor hog-tied, laid out on a table while we all pose around like we just made the world's biggest god-damn drug bust, bro.
>
> CHS: Right?
>
> Fox: At this point, that's like, I mean, I mean. Honestly dude, we need two hundred men.
>
> CHS: Yeah.
>
> Fox: And we need to be able to say we're able to charge her, then we take the building, we take fucking hostages. I mean, it is what it is. It's fucking wartime. It's time to fucking charge these assholes.

    e.    On August 23, 2020, at Harris' residence, defendants Franks and Caserta had the following conversation about anti-government violence:

> Caserta: Now, you know, a lot of people say no, but it's kinda like, you know, like even some people that joined this group, they say they are about it until some little thing happens then they fucking skeddadle real quick.
>
> Franks: Or, or we start talking about fucking offing people, then they're like, "whoa!"
>
> Caserta: Right, right.

---

[2] Forward Looking Infrared Radar scopes.

4

> Franks: I wonder, like,
>
> Caserta: So we'll see what happens we actually start to do it.
>
> Franks: Yeah. No, I've noticed that though, people, like the second we start talking about doing some serious shit, people are like, "Oh yeah, uh, yeah that sounds good," then they send in the chat like, "Yeah, I think I am going to step away for a little bit."

f. The same day, another Wolverine Watchman told Garbin and Caserta, "I know this probably goes without saying, but I just, I'm sure, I just have to say it for my sanity. Um, nobody talks, everybody walks." Caserta replied, "Whatever we do in the future, this is my personal choice to be involved in here. So I voluntarily consent, and I, uh, accept responsibility for anything that happens to me. So, you know, my word is, is solidified as far as what's going on. I'm not, if I ever get hemmed up, I'll do, do my time."

g. The night of September 12-13, 2020, Fox, Croft, Franks, and Harris conducted a nighttime reconnaissance of the Governor's home. Garbin asked Franks, "You want to go on a road trip?" Franks responded, "Yeah, let me grab my gun." The CHS whom Franks accuses of entrapping him asked, "You know what we're doing, right?" Franks replied, "Do I need my rifle?" The CHS responded, "We're not doing it tonight … we're getting eyes on at night." Franks replied, "Yeah. Fuck yeah." When the CHS said they needed to "make sure that we know who's on board with doing it," Franks replied, "Sign me the fuck up."

h. On October 8, 2020, Caserta posted a video urging his co-conspirators to give any law enforcement officers they encounter during a

5

reconnaissance one chance to leave, "Else they're going to die. Period. That's what it's going to be, dude, because they are the fucking enemy, period."

## LAW AND ARGUMENT

"It is well-settled in this circuit that a defendant who wishes to challenge an indictment valid on its face bears a heavy burden indeed." *United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982).

A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits. Fed. R. Crim. P. 12(b)(1).

> Normally, Rule 12(b) motions may appropriately raise for consideration such matters as 'former jeopardy, former conviction, former acquittal, statute of limitations, immunity [and] lack of jurisdiction.' District courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder.

*United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997).

The "merits" or ultimate issue for the factfinder in a criminal trial is whether the defendant is guilty of the offense charged. *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998). A defense, such as entrapment, is capable of determination without a trial only "if trial of the facts surrounding the commission of the offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969).

"It is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question." *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009)

6

(citing *United States v. Fadel*, 844 F.2d 1425, 1434 (10th Cir. 1988) (collecting cases)). "The reasons for such a preference are grounded in the fact that the defense of entrapment is intertwined with the issue of intent and is typically based upon credibility determinations, an area traditionally reserved for jury resolution." *Fadel*, 844 F.2d at 1434, quoting *United States v. Yater*, 756 F.2d 1058, 1062-63 (5th Cir. 1985); *United States v. Janotti*, 673 F.2d 578, 596-97 (3rd Cir. 1982).

"To warrant dismissal before trial on the ground that the defendant was entrapped as a matter of law, we have held that 'the undisputed evidence must demonstrate a "patently clear" absence of predisposition.'" *Id.* (quoting *United States v. Harris,* 9 F.3d 493, 498 (6th Cir. 1993)); *see also United States v. Tucker*, 28 F.3d 1420, 1428 (6th Cir.1994) ("[E]ntrapment and predisposition are ordinarily questions for the jury[.]").

The Supreme Court has discouraged pretrial factfinding to resolve issues of intent. *United States v. Knox*, 396 U.S. 77, 83 (1969) (rejecting pretrial motion to dismiss indictment based on defense of duress).

> The district courts are also understandably reluctant to hold, prior to trial, "mini-trials" devoted to the issues of intent and inducement, complete with dress rehearsals of the trial testimony of government informants and investigative agents. Aside from the repetition between the proof at such motion hearings and the proof at trial, hearings of this type also have the potential for circumventing the discovery rules embodied in the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 16(a), 26.2; 18 U.S.C. § 3500.

*Fadel*, 844 F.2d at 1430.

The defendants cite several cases to suggest this Court can resolve a factually disputed entrapment defense as a matter of law. (R. 379: Def's Mot., PageID.2520.)

7

None of those cases involved pretrial dismissal of an indictment. *See Sherman v. United States*, 356 U.S. 369, 372-73 (1958); *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984); *United States v. Odeesh*, 937 F. Supp. 637, 639 (E.D. Mich. 1996).

The defendants cite *Sherman* for the obvious proposition that "when it can be decided as a matter of law, the issue of whether a defendant has been entrapped may be decided by a judge." (PageID.2520.) In *Sherman*, the prosecution's witnesses had already testified at trial. *Sherman*, 356 U.S. at 373. They cite *McLernon* for the equally unremarkable proposition that entrapment "may be established as a matter of law where the government presents *no evidence* to meet its burden of proving disposition or readiness…" *McLernon*, 746 F.2d at 1111. The trial had already happened in that case too, and the government had "presented no evidence of the character or reputation of [the defendant], including any prior criminal record, from which a reasonable juror could have found that he was predisposed." *Id.* at 1112. The court in *Odeesh* was likewise able to find entrapment as matter of law only because "the evidence presented *at trial*" demonstrated both inducement and lack of predisposition. *Odeesh*, 937 F. Supp. at 639 (emphasis added).

The defendants call the inferences they draw from forty-four pages of quotes "undisputed evidence" of inducement, even though they have yet to be tested at trial. (PageID.2521, 2534.) Franks adds that a CHS was financially compensated, was allowed to possess a firearm, and his performance critiqued by his handlers. (PageID.2785-87.)

8

Franks says this "shows that this CHS controlled the alleged plans in questions [sic]." (PageID.2785.) That inference is unsupported even by the facts he alleges. Things the CHS said to Franks might be offered as evidence of inducement, but the opinions of third parties unknown to Franks are irrelevant to his state of mind. That is to say, Franks could hardly be "controlled" by the opinions of agents he never met. *See, United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir. 1986) (government agent's state of mind is irrelevant to entrapment defense).

Franks observes the CHS was financially compensated, and "ingratiated himself with the defendants." (PageID.2785, 2788-89.) Almost *all* informants are compensated, financially or otherwise. And "ingratiation" is expected – an informant can hardly be expected to gather information by alienating people. As the Sixth Circuit Jury Instructions point out, "It is sometimes necessary during an investigation for a government agent to pretend to be a criminal, and to offer to take part in a crime. This may be done directly, or the agent may have to work through an informant or a decoy. This is permissible, and *without more is not entrapment*." (Sixth Circuit Pattern Jury Instruction 6.03(4), 2019) (emphasis added.)

Franks' suggestion that he was entrapped because the FBI "tolerated CHS misconduct" is equally unsupported. In the case he cites, which is entirely inapposite, an agent continued using the infamous mobster Whitey Bulger as an informant after Bulger murdered other informants and subjects. *McIntyre v. United States*, 336 F. Supp. 2d 87, 97 (D. Mass. 2004). *McIntyre* did not involve entrapment, dismissal of an indictment, or even a criminal case. It held that the

9

plaintiff had a due process right not to be murdered, and that the agents who abetted Bulger were not entitled to qualified immunity from his estate's lawsuit. *Id.* at 132-33.

Contrary to Franks' suggestion, an agent's opinion that a CHS talked too much does not "pellucidly" establish the CHS induced Franks to do anything. (PageID.2783.) Neither would the fact that the CHS was permitted to handle firearms during the investigation. When the CHS illegally possessed firearms *outside* his strict authorization, that conduct was prosecuted, not condoned. (See, WDWI Docket No. 3:21-cr-24, R. 1: Indictment; R. 28: Minutes of Change of Plea.)

Even if the defendants had actually established inducement—which at this point they have only alleged—they overlook that "an entrapment defense has *two* elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011) (internal quotations and citations omitted). Even the most compelling inducement does not establish entrapment if the defendant is predisposed. In *United States v. Williams*, 547 F.3d 1187 (9th Cir. 2008), for example, the defendant argued he was induced as a matter of law because the government offered him more than a million dollars in potential cocaine sales. "But even assuming that [he] was induced to enter the conspiracy by the lure of substantial financial gain, the government proved that he was predisposed to commit the crime." *Id.* at 1198.

10

In an apparent concession that predisposition *is* disputed in this case, the defendants ask the Court to embrace an "objective" entrapment defense. (PageID.2534.) This is more commonly known as the "outrageous government conduct defense," in which "a defendant argues that the government's involvement in creating his crime (i.e., the means and degrees of inducement) was so great 'that a criminal prosecution for the [crime] violates the fundamental principles of due process.'" *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 430, 93 S. Ct. 1637 (1973)). This "defense is distinct from the affirmative defense of entrapment, which requires the defendant to establish that he was not predisposed to commit the crime." *Id.* (citing *United States v. Tucker*, 28 F.3d 1420, 1422 (6th Cir. 1994)). Instead, the outrageous government conduct defense "looks only at the government's conduct and determines whether it is sufficiently outrageous so as to violate the Constitution." *Id.*

Although they cite the case in their own brief (PageID.2520), the defendants fail to mention that the Sixth Circuit expressly foreclosed the "outrageous government conduct" defense in *Tucker*. "[T]here is no binding Supreme Court authority recognizing a defense based solely upon an objective assessment of the government's conduct in inducing the commission of crimes." *Tucker*, 28 F.3d at 1426. In fact, when that district court granted Tucker the same relief our defendants request, the Sixth Circuit reversed: "[T]he Supreme Court, by repeated majority decision, has held that the balance between the desire to curb government

11

inducement and the need to convict criminals is drawn at *predisposition*, not 'outrageousness.' The district court's dismissal in this case flaunts that balance." *Id.* at 1428 (emphasis in original).

Notwithstanding the defendants' conclusory claim, there is no "undisputed evidence" of anything yet. Nor is a pretrial motion hearing the place to adduce it. "[T]he prosecution's evidence is tested at trial, not in a preliminary proceeding." *United States v. Short*, 671 F.2d 178, 183 (6th Cir. 1982) (disapproving "extensive mini-trials" as wasteful of judicial resources and contrary to the constitutional scheme). A motion to dismiss the indictment should be "more properly raised at trial as a Rule 29 motion for judgment of acquittal." *United States v. Jamal*, No. 03-20104 BV, 2004 U.S. Dist. LEXIS 6302, at *11-12 (W.D. Tenn. Jan. 14, 2004) quoting *Short*, 671 F.2d at 183.

WHEREFORE, the government requests the Court deny the defendants' motion to dismiss the superseding indictment.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: January 21, 2022

   */s/ Nils R. Kessler*
NILS R. KESSLER
JONATHAN ROTH
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
*nils.kessler@usdoj.gov*
*jonathan.roth@usdoj.gov*