UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        No. 1:20-cr-183

vs.                                    Hon. Robert J. Jonker
                                            Chief United States District Judge

KALEB JAMES FRANKS,

        Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO COMPEL USE IMMUNITY

Franks moves this Court to immunize unspecified witnesses whom he alleges could provide exculpatory testimony on his behalf. The court lacks the authority to compel a grant of use immunity, and the relief he requests would be inappropriate in any event.

### FACTS

1.    Franks asked the Court to order the government to seek use immunity for witnesses who might invoke their Fifth Amendment right against self-incrimination. (R. 412: Def's Mot.) He says "a number of both the agents and sources" have reason to invoke the privilege, but does not identify any specifically. (PageID.2849-50.)

2.    No government agents have any reason to invoke the Fifth Amendment, and none will. The government's primary confidential human source,

CHS "Dan" has already testified in open court in state proceedings, and will testify against Franks in the government's case-in-chief.

3. Former CHS "Steve" might plausibly consider invoking his Fifth Amendment right against self-incrimination. As discussed at the January 18, 2022 hearing on Franks' previous motions in limine, the government terminated Steve's CHS status in October 2020, after it learned he had been surreptitiously assisting the other conspirators. Of note:

   a. Steve failed to notify his handling agents that Franks, Ty Garbin and Brian Higgins recorded themselves conducting the nighttime surveillance of the Governor's home on a dash-mounted video camera. The conspirators gave a USB drive with a copy of the footage to CHS Dan, however, who provided it to his handlers.

   b. After the FBI arrested Fox, Harris, Caserta, and Garbin on October 7, 2020, agents admonished Steve not to take any calls or provide anyone information about the arrests—including Croft, who remained armed and at large. Notwithstanding the warning, Steve called Croft 30 minutes later to alert him he was wanted.

   c. Steve next called a CHS whom he did not know was working with the FBI, told her to encrypt the group's training rosters, and said he would still help with the kidnapping. He then called CHS Dan, whom he also did not know was a government source, and asked him to get rid of the USB drive with footage of Franks casing the Governor's house. He later instructed CHS Dan to throw Croft's

2

"300 Blackout" rifle[1] in the lake, and get rid of a vehicle used in the nighttime reconnaissance.

    d.  After learning that Steve illegally possessed firearms in violation of his CHS agreement, the United States Attorney's Office for the Western District of Wisconsin charged and convicted him for violating 18 U.S.C. § 922(g). (WDWI No. 3:21-cr-24, R. 2: Indictment.) Steve's plea agreement explicitly states that it only resolves the federal case against him in Wisconsin. (R. 29: Plea Agreement, ¶ 8, page 3 of 5.) It does not protect him from prosecution by state or federal authorities in Michigan. (*Id.*)

    e.  When interviewed by FBI agents in December 2020, Steve admitted making the calls described above, but claimed he was only trying to avoid being "outed" as a source. He also admitted lying to the FBI about what his friend Brian Higgins knew during the nighttime reconnaissance, in order to protect him.

    4.  Franks claims, without citing any examples, that his "codefendants, and multiple individuals charged in state court, all affirm that [he] did not participate in any conspiracy." (R. 404: Motion to exclude co-conspirator statements, PageID.2812.) He moved earlier, however, to exclude his co-defendants' post-arrest statements because they would incriminate him. (R. 409: Def's Mot., PageID.2837.) In any event, it appears for the purposes of this motion that Franks seeks use immunity for the state and federal co-defendants. (PageID.2850.)

---

[1] Croft can be heard in a recording telling the other conspirators that the assault rifle's attached 37-millimeter projectile launcher could be used to disable the lead vehicle in the Governor's protection detail.

LAW AND ARGUMENT

The court may grant use immunity to a witness upon the request of the United States Attorney, where the witness' testimony may be necessary to the public interest, and the witness has refused (or is likely to refuse) to testify on the basis of his privilege against self-incrimination. 18 U.S.C. §§ 6002, 6003. This statute gives the executive branch sole authority to grant use immunity, and does not require the government to grant immunity to a defense witness. *United States v. Mohney*, 949 F.2d 1397, 1401-03 (6th Cir. 1991).

The Sixth Circuit has "consistently held that a district court is without authority to either grant immunity to a witness who asserts his Fifth Amendment privilege against self-incrimination, or to force the government to do so." *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999). Franks concedes that *Mohney* forecloses the relief he requests. (PageID.2850.)

He nonetheless proffers two theories for compulsion discussed by the *Mohney* court: (1) the "effective defense" theory, and (2) the "prosecutorial misconduct" theory. (*Id.*) The "effective defense" theory suggests a defendant could be entitled to an immunity order where the unavailable testimony is his only hope for acquittal. The Sixth Circuit has "rejected this theory because it would violate separation of powers to recognize an inherent judicial right to grant immunity when immunity is a legislative creation explicitly entrusted to the executive branch." *Mohney*, 949 F.2d at 1401 (quoting *United States v. Pennell*, 737 F.2d 521, 526-27 (6th Cir. 1984)).

The Sixth Circuit has observed that "[c]ompelled judicial use immunity could also impair the subsequent prosecution of the witness. If the government will be limited to prosecuting either the defendant or the immunized witness because it will not be able to prove that the immunized testimony would not taint the prosecution of the witness, the choice of which one to prosecute should rest with the government, not with the courts." *Id.* Even if the court had the inherent authority to grant immunity, denial would be appropriate "where the government informs the district court that it intend[s] to leave open the possibility of criminal liability in the event that the witness perjure[s] himself or implicate[s] himself in additional [crimes]." *United States v. Stapleton*, 297 F. App'x 413, 432-33 (6th Cir. 2008).

The second ("prosecutorial misconduct") theory suggests due process could require relief where the prosecution deliberately withholds immunity for the sole and intentional purpose of distorting the factfinding process. *Mohney*, 949 F.2d at 1402. The Sixth Circuit has not recognized this theory. *Id.*, citing *Pennell*, 737 F.2d at 526. Even theoretically, relief would be appropriately denied unless the defendant met the "high threshold" of proving such ill intent. *Stapleton*, 297 F. App'x at 433; *United States v. Turner*, No. 05-02, 2005 U.S. Dist. LEXIS 31709, at *14-17 (E.D. Ky. Nov. 30, 2005).

The government has no objection to Steve testifying, and fully expects Franks to call him as a witness. The government will not seek to immunize him from prosecution, however, for two reasons:

5

First, Steve has potentially committed offenses for which he has not yet been charged, including aiding and abetting the defendants, and conspiring with them to kidnap the Governor. Whether he intended to help with the kidnapping, obstruct justice after the fact, or simply protect himself from retaliation is unclear at the moment. But his sworn testimony could provide the necessary proof of intent to pursue new charges against him here or in state court.

Second, Steve has already risked prosecution to help the defendants avoid accountability. With use immunity, he could falsely testify that he deliberately attempted to entrap them. If the defendants were acquitted based on such fabrication, the government would have no recourse but to try Steve for perjury, while the kidnappers walked away without being held accountable for their actions.

Franks also seeks immunity for yet unidentified state defendants. Even if the Court had the authority to grant them federal use immunity, it would not obviate their Fifth Amendment privilege with regard to pending state prosecutions.

Finally, Franks requests immunity for the other federal co-defendants, on the theory that they could testify on his behalf. Even if they had exculpatory testimony to provide, they could not testify for Franks but remain silent about their own charges without raising inferences of guilt that no instruction could cure.

More realistically (as Franks argues in his motion to exclude their statements) the co-defendants' testimony would be damaging to Franks. If any co-defendant actually took the stand under a grant of use immunity, the *Bruton* rule would no longer apply. The government could play a video recording of that

6

defendant inculpating Franks, and because Franks could cross-examine the immunized defendant, his Sixth Amendment confrontation right would no longer conflict with anyone's Fifth Amendment right against self-incrimination.

Franks concedes that this court lacks the power to compel an executive grant of use immunity. Even if it had that power, there would be no reason to use it: Franks has not alleged that the government is attempting to distort the factfinding process, and the immunized testimony he seeks would be more likely to convict him than help him mount an effective defense.

WHEREFORE, the government requests the Court deny Franks' motion to compel use immunity.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: January 24, 2022

 */s/ Nils R. Kessler*
NILS R. KESSLER
JONATHAN ROTH
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
*nils.kessler@usdoj.gov*
*jonathan.roth@usdoj.gov*